[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON HOUSING AUTHORITY'S MOTION FOR SUMMARY JUDGMENT
In this case a complaint was filed in which the plaintiff alleged he was a resident of premised owned by the Milford Housing Authority. He claims he fell while proceeding down an outside staircase and received injuries. The plaintiff claims the defendant Housing Authority's negligence caused the fall because, among other things, it authorized the use of defective materials in the repair of the staircase, authorized the use of defective design in repair of the staircase, failed to supervise the work and authorized the use of incompetent people to do the repair work. In a second count the plaintiff sued Lencar Painting and Restoration Company on a negligence theory. This company actually was hired by the Housing Authority to perform "repairs and/or improvements" on the staircase.
The Housing Authority then filed a cross-claim against Lencar in two counts. In the first count the claim is made that Lencar breached a provision of the contract between the parties which provided that the Housing Authority be named by Lencar as an additional insured on the insurance policy carried by Lencar. (§ 102B(2) of Contract).
In the second count of the cross-claim the Housing Authority makes an indemnification claim against Lencar and relies on the following language of the contract at § 102(A) which states:
 "102A. Indemnification. The contractor shall indemnify and hold harmless the owner and City from liability for any injury or damages to persons or property resulting from the performance of the rehabilitation work."
It should also be noted that the contract was between Lencar on one side and the Housing Authority and the City of Milford on CT Page 4605 the other side.
The Housing Authority has moved for summary judgment on both counts of its cross-claim against Lencar. It claims there are no disputed issues of fact. Citing Lencar's response to requests for admission, the Housing Authority notes that Lencar admits the authenticity of the contract, admits that it agreed to hold harmless and indemnify the Housing Authority pursuant to the contract for any injury or damage to person or property resulting from the performance of the rehabilitation work, admitted that it installed the staircase in question. The Housing Authority points also to the fact that Lencar did not list the Housing Authority as an additional insured on any policy of insurance.
Lencar in effect argues by way of special defense that the Housing Authority has waived its right to advance a breach of contract claim because of Lencar's failure to add the authority as an additional insured to the insurance policy. It also argues that the Housing Authority is not entitled to summary judgment on the indemnification claim because the allegations of the injured plaintiff's claims raise negligence claims against the Housing Authority not covered by the language of the indemnification agreement.
Lencar also claims that the cross-claim itself is a violation of § 111(A) of the contract which provides for arbitration; the Housing Authority argues that Lencar has waived its right to seek arbitration.
 I.
It is undisputed that the explicit terms of the contract provided that it was Lencar's contractual obligation to have the Housing Authority listed as a named insured on its policy. It is also undisputed that Lencar did not comply with this contractual provision and commenced work on the staircase. These are the relevant undisputed facts. The Housing Authority would on these facts be entitled to summary judgment for breach of this contractual provision.
But Lencar claims that the Housing Authority waived its right to raise this matter as a breach of contract. It is textbook law that: ". . . a party for whose benefit a provision in a contract is intended may waive his (or her) rights under such provision."Lanna v. Greene, 175 Conn. 453, 458 (1978), see 3A Corbin § 761. CT Page 4606 It has also been said that waiver is a question of fact; it does not have to be express but can consist of conduct from which waiver may be implied. As one court said: "In other words, waiver may be inferred from the circumstances if it is reasonable to do so." Loda v. H.K. Sargeant Associates, Inc., 188 Conn. 69, 76
(1982); also see Multiplastics, Inc. v. Arch Industries, Inc.,166 Conn. 280, 286 (1974). The discussion in 17A Am.Jur.2d "Contracts", § 731, page 741 states the rule and suggests the reason behind it:
 "Although intent is necessary to effect a waiver of a breach of contract, it need not be shown by direct evidence; but if it appears to exist so as to mislead the adversary, it works an estoppel. The waiver of a breach of contract may be shown by an act which is so inconsistent with an intent to enforce the right which arises upon the breach as reasonably to induce the belief that the right has been relinquished. The acceptance of the benefit under a contract with knowledge of a breach thereof ordinarily constitutes a waiver of the wrong."
In this case, § 102B(2) of the contract says:
 "The City of Milford and property owner shall be named as insured by a specific endorsement to the policy of insurance carried by the contractor, and a copy of the actual policy of insurance shall be furnished to the City of Milford for its examination and review and approval prior to or at the time of the execution of the agreement."
The "property owner" here is the Housing Authority. The latter entity knew or should have known Lencar commenced work on and brought this project to a completion. Any copy of the insurance policy or failure to deliver such a copy would indicate whether the City and/or the Housing Authority were added to the policy prior to execution of the agreement, that is, commencement of work on this project. Would it be unfair in a situation like is, according to the waiver principles just referred to, for a party in the position of the Housing Authority to allow work to begin and be completed, despite failure to comply with a provision CT Page 4607 added to the contract for its protection, and then having received the benefit of the contract work sue, based on the absence of compliance with the provision?
To address the waiver question it must be asked if the Housing Authority knew or would have reason to know that Lencar commenced the work without adding it as an insured. Or perhaps to put it another way, would Lencar, not having given notice to the City that the City and the Housing Authority were added to the policy, have reason to think that the Housing Authority had relinquished its contract right regarding insurance. To paraphrase Am.Jur., was Lencar reasonably induced to believe the Housing Authority relinquished this contract right as Lencar commenced work?
The court cannot say that a material issue of fact does not exist as to the question of waiver. Once a prima facie case of breach is made as here, the burden should shift to the party claiming waiver. But here the contract provided that Lencar should give notice to the City regarding the insurance coverage. Why couldn't Lencar assume that the City was in effect the Housing Authority's agent for the purposes of monitoring compliance with the insurance requirement as to both the City and the Housing Authority — the fact that they are separate entities would not preclude Lencar from having that reasonable assumption since the insurance provision was for the benefit of both these entities and notice of compliance by a copy of the policy although made solely to the City would indicate whether there was compliance as to both entities. Or, from another perspective, if the insurance requirement was so important to the City and the Housing Authority and that of necessity was apparent to all parties, why couldn't Lencar assume that by inclusion of a contract provision requiring notice of compliance as to both parties be delivered to only one of the parties, the party not so notified meant to verify compliance by conferring with the party actually authorized to receive the notice if it so desired? The point is Lencar was authorized to and in fact commenced the work when it knew it had not added the City and Housing Authority to its policy and obviously had not complied with notice provisions in the contract that this had been done, although such compliance was a condition precedent to begin work. It is at least a question of fact whether the Housing Authority intentionally waived its right to demand compliance with the insurance provisions of the contract when it allowed contract work to proceed for its benefit without taking any steps, at least on the CT Page 4608 fact of this record, to inform itself by means of notice provisions in its own contract whether the condition precedent to begin contract work had in fact been complied with by Lencar.[1]
 II.
The Housing Authority has also moved for summary judgment on the indemnification count. It refers to the indemnification clause in the contract and the allegations of the plaintiff's complaint. As indicated, the indemnification clause indicates the contractor shall indemnify for any injury or damages to persons or property "resulting from performance of the Rehabilitation work." (Emphasis added.) Contract interpretation is a question of law for the court. The Supreme Court has said that what the parties intended by their contractual commitments is a question of law where definitive contract language exists. Levine v. Massey,232 Conn. 272, 277-278 (1995). Here one of the allegations of the complaint made by the man injured in the fall down the staircase is that there was negligence causing him injury because of "the use of defective design in repair of the subject staircase" and "the use of defective materials." The same allegations are made against the Housing Authority and Lencar. Lencar has denied all allegations of negligence against it including the last two mentioned allegations. The Housing Authority would be entitled to summary judgment on the indemnification count only if the injured plaintiff incurred injury resulting from Lencar's "performance" of work on the staircase — its indemnification rights are, of course, defined by the indemnification clause. The question becomes would a "defective design in repair" of the staircase if the Housing Authority determined the design or, perhaps, "the use of defective materials," if the defective nature of the materials were known to the Housing Authority and not Lencar — could these allegations, if proven in this manner at trial, be defined as "performance" by Lencar (in the sense used in the indemnification clause)? In other words, Lencar could have performed its work in a completely safe and non-negligent manner but a jury could still find the design of the staircase was such that the injured claimant fell due to this negligent design. Such a conclusion may not absolve Lencar of responsibility to the injured plaintiff who brought the original action but query whether as between Lencar and the Housing Authority the injury could be said to have resulted from any "performance" by Lencar in repairing the staircase as that term is used in the indemnification clause.
Besides if it could be found that the injuries here could CT Page 4609 have resulted from the exclusive negligence of the Housing Authority, the court is reluctant to interpret a contract provision in such a way as to impose indemnification responsibilities on another non-negligent party.
In any event, although interpretation of the word "performance" in relation to this suit is a question of law, the meaning of the word "performance" in this legal context is sufficiently ambiguous so that "[any determination of meaning or ambiguity should only be made in the light of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade and the course of dealing between the parties. . . ." From Restatement (Second) Contracts § 212, comment (b). The language used by the parties, as the Restatement goes on to note, is still the most important indication of intention. But given the previous observations of the court, it does not have the requisite subordinate facts to resolve the question of law before it, i.e., interpretation of the language of the indemnification clause in light of the claims made. The court will not grant summary judgment on this count.
 III.
In light of the court's previous rulings, it would not be appropriate to, in effect, give an advisory opinion of the viability of Lencar's special defense that the filing of the cross-claim by the Housing Authority violated the contract provision calling for arbitration of disputes under the contract.
In any event, the court denies the motion for summary judgment.
Corradino, J.